## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ORRICK, HERRINGTON & SUTCLIFFE
LLP,

1152 15th Street NW
Washington, DC 20005

           Plaintiff,

     v.

U.S. CUSTOMS AND BORDER
PROTECTION,

1300 Pennsylvania Avenue NW
Washington, DC 20229

and

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

500 12th Street SW
Washington, DC 20536

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

## COMPLAINT

## I.  INTRODUCTION

1.      Plaintiff Orrick, Herrington & Sutcliffe LLP ("Orrick" or "Plaintiff"), a law firm

working with several other organizations to represent a Class of individuals defined in the *Flores*

settlement, *see Jenny L. Flores, et al. v. William P. Barr, et al.*, CV 85-4544-DMG (AGRx)

(C.D. Cal.) (the "*Flores* Settlement" or the "Settlement"), brings this action seeking declaratory

and injunctive relief to redress violations of the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 *et seq.*, by Defendants U.S. Immigration and Customs Enforcement ("ICE") and U.S.

Customs and Border Protection ("CBP") (together, "Defendants") in failing to provide Plaintiff

with any substantive response, including documents, in connection with its August 15, 2019

FOIA Requests (the "FOIA Requests" or the "Requests").  The information sought in the FOIA

Requests is directly relevant to the *Flores* Class Members and their time in Defendants' custody.

Without this information, Plaintiff, the *Flores* class members themselves, public interest groups,

and other interested parties involved in enforcement of the *Flores* Settlement are hampered in

their efforts to hold ICE, CBP, and other agencies, offices, and officers within the federal

government accountable for complying or failing to comply with the terms of the Settlement.

## II.  JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this action under 28 U.S.C.

§ 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 702 *et seq.*

3.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) because

Defendants are headquartered in this judicial district.

## III.  PARTIES

4.      Plaintiff is Orrick, Herrington & Sutcliffe LLP, an international law firm with a

significant pro bono program.  Among many pro bono cases, Orrick is co-counsel to the Class

Members of the *Flores* Settlement, which consisted of all minors who were and are detained in

the legal custody of the U.S. Immigration and Naturalization Service ("INS").[1]

5.      Defendant ICE is an office of the Department of Homeland Security ("DHS"), is a

federal agency within the meaning of FOIA, § 552(f)(1), and is headquartered in Washington,

DC.  ICE has possession, custody, and control of the records Plaintiff seeks in this action.

---

[1] "[P]ursuant to the 2001 agreement, the Settlement continues to govern those agencies that now carry out the functions of the former INS." *Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017).

6.      Defendant CBP is an office of DHS, is a federal agency within the meaning of FOIA, § 552(f)(1), and is headquartered in Washington, DC.  CBP has possession, custody, and control of the records Plaintiff seeks in this action.

## IV.  LEGAL FRAMEWORK OF FOIA

7.      FOIA requires, *inter alia*, that federal agencies must make non-exempt records "promptly available to any person" who makes a request for records that reasonably describes the nature of the records sought, and which conforms with agency regulations and procedures pertaining to the request of such records.  § 552(a)(3)(A).

8.      Federal agencies must provide non-exempt public records when they are requested by the public in order "to ensure an informed citizenry, vital to the functioning democratic society."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

9.      An agency must determine "whether to comply with [a FOIA] request" "within 20 days (excepting Saturdays, Sundays, and legal public holidays)," and must "immediately notify the person making such request of," *inter alia*, "such determination and the reasons therefor." § 552(a)(6)(A)(i); *see also* 15 C.F.R. § 4.6(b).

10.     The twenty-day deadline for an agency to determine whether to comply with a request begins on the earlier of: (a) the date "the request is first received by the appropriate component of the agency," or (b) "ten days after the request is first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." § 552(a)(6)(A)(ii).

11.     "In unusual circumstances as specified in [§ 552(a)(6)(B)(iii)], the [twenty-day] time limit[] prescribed [in § 522(a)(6)(A)(i)] may be extended by written notice to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched." § 522(a)(6)(B)(i).  "Unusual circumstances" in this

context means "(I) the need to search for and collect the requested records from field facilities or

other establishments that are separate from the office processing the request; (II) the need to

search for, collect, and appropriately examine a voluminous amount of separate and distinct

records which are demanded in a single request; or (III) the need for consultation, which shall be

conducted with all practicable speed, with another agency having a substantial interest in the

determination of the request or among two or more components of the agency having substantial

subject-matter interest therein."  § 522(a)(6)(B)(iii).

12.     However, "[n]o such notice shall specify a date that would result in an extension

for more than ten working days, except as provided in clause (ii) of this subparagraph."

§ 552(a)(6)(B)(i).

13.     Clause (ii) of Section 522(a)(6)(B) states in relevant part that "[w]ith respect to a

request for which a written notice under [§ 552(a)(6)(B)(i)] extends the [twenty-day] time limit[]

prescribed under [§ 522(a)(6)(A)(i)], the agency shall notify the person making the request if the

request cannot be processed within the time limit specified in that clause and shall provide the

person an opportunity to limit the scope of the request so that it may be processed within that

time limit or an opportunity to arrange with the agency an alternative time frame for processing

the request or a modified request."

14.     FOIA expressly provides that a person "shall be deemed to have exhausted [their]

administrative remedies if the agency fails to comply with the applicable time limitations

[provided by 5 U.S.C. § 552(a)(6)(A)-(B)]." § 552(a)(6)(C)(i).

15.     FOIA provides that any person who has not been provided the records requested

pursuant to FOIA, after actually or constructively exhausting their administrative remedies, may

seek legal redress from the Federal District Court to enjoin the agency from withholding agency

records and to order the production of any agency records improperly withheld from the

complainant.  *See* § 552(a)(4)(B); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir.

1990) ("[C]onstructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to

the courts to compel the agency's response to a FOIA request.").

      16.     FOIA also provides that this Court may assess attorney fees and litigation costs

against the United States if Plaintiff prevails in this action.  *See* § 552(a)(4)(E).

## V.  FACTUAL ALLEGATIONS

### 1.  The FOIA Requests

      17.     On August 15, 2019, Plaintiff submitted a FOIA request via electronic mail to

DHS and CBP which requested:

> (1) Any documents regarding allocation of funds for the purpose of "mak[ing] and record[ing] prompt and continuous efforts toward family reunification and the release of the minor" from the U.S. Department of Homeland Security ("DHS") custody and/or facilities, as required by Paragraph 18 of the *Flores* Settlement.
>
> (2) All communications, instructions, guidance, directives, training materials issued to U.S. Customs and Border Patrol ("CBP") personnel regarding any and all "efforts toward family reunification and the release of the minor" from DHS custody and/or facilities.
>
> (3) All records of the steps taken by DHS or CBP officials "to make and record prompt and continuous efforts toward family reunification and the release of the minor" from DHS custody and/or facilities pursuant to Paragraphs 14 and 19 of the Flores Settlement, including:
>
>> (i) the names, titles and locations of each CBP or U.S. Immigration and Customs Enforcement ("ICE") agent that has made effort(s) aimed at release of the Class Member and date upon which each agent made such effort(s);
>>
>> (ii) names and locations of relatives, friends or licensed group homes contacted for release or placement of the Class Member, the dates of such contacts, and names, titles and location of CBP or ICE employees who made the contacts;
>>
>> (iii) the results of efforts aimed at release of the Class Member;

(iv) documentation explaining, supporting, and/or otherwise describing each decision to release or to deny release of the Class Member;

(v) for Class Members who were released, whether the Class Member was released alone of with an accompanying relative;

(vi) the dates, if any, on which the decision to release or to deny release was explained by CBP or ICE employees to Class Members or their accompanying parents, the names of the officers who provided the information, and the location where the information was provided;

(vii) the dates, if any, on which a Class Member's parent opted her or his Class Member child out of the release provisions of the Agreement;

(viii) if not released pursuant to Paragraph 14, the date a Class Member was placed in a licensed facility under Paragraph 19 and the reason the Class Member was not released;

(ix) if not released under Paragraph 14 or placed in a licensed facility within fifteen days of apprehension, pursuant to Paragraph 19, the reason the Class Member was not placed in a licensed facility within fifteen days of apprehension.

(4) For all Class Members who are placed and remain in custody for longer than 72 hours, statistical information including the following: "(1) redacted minors name to preserve confidentiality, date of birth, and country of birth, (2) date placed in [CBP] custody, (3) each date placed, removed or released [from CBP custody], (4) to whom and where placed, transferred, removed or released [by CBP], (5) immigration status, and (6) hearing dates [if any]." See Settlement Paragraph 28.A. The information should also include the reasons for every placement of a minor in a detention facility. Id.

(5) For CBP detention facilities in El Paso and Rio Grande Valley Border Patrol Sectors:

(a) any records documenting the internal temperatures maintained in the CBP facilities;

(b) any records or documentation demonstrating efforts to ensure that the minimum temperature maintained in the CBP facilities is not below 70 degrees and does not exceed 75 degrees;

(c) all records for each Class Member documenting:

(i) the dates, times, and locations of field apprehension or port of entry;

-6-

(ii) the initial medical assessments conducted by CBP agents and/or CBP medical staff and the results of those assessments; and

(iii) any and all special needs assessments conducted by staff and the results of those assessments;

(d) all records for each Class member documenting:

(i) initial CBP book-in;

(ii) E-3DM entry notifying the Office of Refugee Resettlement ("ORR") of Class Members who are unaccompanied minors; and

(iii) if applicable, transfer to a different CBP facility;

(e) all records for each Class Member denoting:

(i) whether the Class Member was accompanied by a caregiver at the time CBP custody commenced (either at point of entry or time apprehended);

(ii) if accompanied by a caregiver: the name and contact information of the caregiver; last known location of caregiver; and, if applicable, the date, time, and location of and reason for separation from caregiver;

(f) All records for each Class Member documenting:

(i) the date, time, and location of food and water served to Class Member;

(ii) the type of food (hot or cold) provided;

(iii) and whether the food and water were accepted or rejected;

(g) if Class Members were held overnight, all records showing whether Class Members were provided blankets and mattresses to sleep on and/or were provided soap and towels;

(h) all records of complaints by Class Members about lack of food, water, medical attention, overcrowding conditions, and unsanitary conditions;

(i) all documents relating to any delays in ORR offering to take custody of Class Members who are unaccompanied minors in CBP custody.

(6) For Class Members placed in secure facilities under Paragraph 21 of the Settlement:

(a) all records of the dates Class Members were held in or

transferred to a State or county juvenile detention facility, a secure ICE detention facility, or a contracted facility;

(b) all documentation explaining why Class Members were transferred to secure facilities, including explanation for why less restrictive facilities were unavailable or inappropriate;

(c) all records of the names of the facilities to which the Class Members were transferred;

(d) if no longer detained in secure placement, records of the dates the Class Members were released or transferred to non-secure placements.

(7) To the extent not covered in the above requests, the dates on which Class Members were assessed for special needs, the results of such assessment for each Class Member assessed, actions taken as a result of such assessment (if any), and documents regarding compliance with Paragraph 7 of the *Flores* Settlement.

(8) For any Class Members who have died while in CBP facilities in El Paso and Rio Grande Valley Border Patrol Sectors, all records of the dates and results of all medical assessments on the Class Members; any actions taken as a result of such assessments; and records of the number of Class Members who have died.

(9) All documents relating to the regulation of transportation of Class Members in compliance with Paragraphs 25 and 26 of the *Flores* Settlement.

(10) To the extent not covered in the above requests, any documents discussing DHS and/or CBP budget for allocating resources (e.g. personnel, hiring, training, data-gathering, computer software, computer hardware) to "make and record prompt and continuous efforts toward family reunification and the release of minors" from DHS custody. *Flores* Settlement Paragraph 18.

(11) To the extent not covered in the above requests, any documents, communications or reports gathering data to monitor any efforts being taken to release Class Members as promptly from DHS custody and/or facilities.

(12) All contracts relating to provision of medical assessments and medical care in DHS and CBP custody and facilities in El Paso and Rio Grande Valley Border Patrol Sectors.

(13) All contracts relating to hiring personnel whose responsibilities include attending to needs of children in DHS custody at CBP facilities, including but not limited to assisting children with bathing, brushing teeth, dressing, eating.

(14) All contracts with outside food providers relating to provision of age-appropriate and nutritious food to Class Members in DHS

custody at CBP facilities in El Paso and Rio Grande Valley Border Patrol Sectors.

(15) To the extent not covered by the requests above, all current contracts with entities for the detention of Class Members and licenses issued for the operation of such entities. If such entities have sub-contracted with other entities to perform detention functions for Class Members, lists of all sub-contractors and copies of all current sub-contracts.

(16) All documents recording the number of immigrants held in enclosed cells on a daily basis in CBP facilities in El Paso and Rio Grande Valley Border Patrol Sectors.

(17) All documents, including, but not limited to, trainings and directives to CBP personnel relating to compliance with local fire codes, rules or regulations setting a maximum number of people permitted to be held in CBP facilities in El Paso and Rio Grande Valley Border Patrol Sectors.

(18) Any records of the categories of employees, agents, and contractors trained to implement documents to ensure compliance with the *Flores* Settlement, including the individuals' titles and duty locations, the dates of trainings, and all training materials bearing upon the implementation of compliance documents.

(19) All non-protected documents relating to proposed federal regulation 83 FR 45486 - Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children and the corresponding final rule.

Exhibit A, attached hereto and incorporated by reference herein.

18.     On August 16, 2019, Plaintiff received a response letter from DHS indicating that

the Requests were being forwarded on to the FOIA Officers for ICE and CBP at separate

addresses.  *See* Exhibit B, attached hereto and incorporated by reference herein.

**2.  ICE's Failure to Respond to the FOIA Requests**

19.     On September 4, 2019, Plaintiff received an email from ICE acknowledging their

receipt of Plaintiff's FOIA Requests on August 16, 2019.  *See* Exhibit C, attached hereto and

incorporated by reference herein.

20.     The email from ICE further stated that "[a]lthough ICE's goal is to respond within

20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time

period.  As your request seeks numerous documents that will necessitate a thorough and wide-

ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5

U.S.C. § 552(a)(6)(B).  If you care to narrow the scope of your request, please contact our office.

We will make every effort to comply with your request in a timely manner." *Id.*

21.     The 10-day extension beyond the 20-day deadline put the FOIA response date on

or about September 26, 2019.

22.     On November 12, 2019, and November 14, 2019, Plaintiff sent follow-up emails

to ICE seeking to learn the status of the Requests; no response was received.

23.     On November 19, 2019, a call to the ICE FOIA office was met with a recorded

response indicating that the call could not be completed.

24.     During this period, Plaintiff's searches on the ICE FOIA website indicated that no

requests with the previously given case number; it was not until Plaintiff's attempt on March 7,

2020, that a search of the ICE FOIA website reflected a "Request Status" of "Request for Docs

Sent" and an "Estimated Delivery Date" of "2/19/2020."  Plaintiff's check on May 22, 2020,

indicated an "Estimated Delivery Date" of "6/25/2020," which has remained unchanged as of

June 16, 2020—revealing ICE's continual disregard for either Plaintiff's requests or the

statutorily mandated deadlines.

25.     Plaintiff did not receive any further communication, production of documents,

final response letter, or other correspondence from ICE after the September 4, 2019 email.

26.     At no point has ICE notified Plaintiff pursuant to § 522(a)(6)(B)(ii) that the

Requests could not be processed within the requested 30-day period, nor has ICE sought an

"alternative time frame for processing the request or a modified request."

### 3.  CBP's Failure to Respond to the FOIA Requests

27.     To date, CBP has never provided any written or electronic response to Plaintiff's

Requests.

28.     On November 12, 2019, Plaintiff called the CBP FOIA office and was told by a

CBP staff member that the Requests had not been addressed due to a backlog of requests.

29.     On November 14, 2019, Plaintiff left a voicemail with the CBP FOIA office

seeking an update on the status of the Requests.

30.     On November 19, 2019, Plaintiff spoke on the phone with a CBP staff member

named Paul who said that he would follow-up on having the Requests assigned and prioritized.

31.     Since the November 19, 2019 call, Plaintiff has not received any further

communication, production of documents, final response letter, or other correspondence from

CBP.  Throughout that time, periodic checks of the CBP website—including on June 16, 2020—

have only indicated that the matter has remained "Under Agency Review."

32.     At no point has CBP notified Plaintiff pursuant to § 522(a)(6)(B)(ii) that the

Requests could not be processed within the 20-day deadline, nor has CBP sought an extension or

"alternative time frame for processing the request or a modified request."

### 4.  Exhaustion of Administrative Remedies

33.     Given that Defendants have failed to provide the required determinations in

response to Plaintiff's FOIA Requests by the statutory deadlines, Plaintiff has constructively

exhausted its administrative remedies and may pursue judicial review.  *See* § 552(a)(6)(C)(i);

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("[C]onstructive exhaustion

under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's

response to a FOIA request.").

## VI.  CAUSES OF ACTION

### Count 1
### Violation of FOIA, 5 U.S.C. § 552(a)(3)(A), for Failure to make Promptly Available the Records Sought by Plaintiff's Requests

34.     Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

35.     Plaintiff properly requested records within the possession, custody, and control of Defendants.

36.     Defendants' failure to make promptly available the records sought by Plaintiff's Requests violates FOIA, 5 U.S.C. § 552(a)(3)(A).

### Count 2
### Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), for Failure to Timely Respond to Plaintiff's Requests with the Required "Determinations"

37.     Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

38.     Plaintiff properly requested records within the possession, custody, and control of Defendants.

39.     Defendants' failure to respond timely to Plaintiff's Requests with the required determinations violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DHS regulation promulgated thereunder, *see* 6 C.F.R. § 5.6(c).

## VII.  PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter Judgment for Plaintiff, and provide the following relief:

(a)  Declare that Defendants have violated FOIA by failing to provide Plaintiff with all non-exempt records responsive to Plaintiff's FOIA Requests.

(b)  Declare that Defendants have violated FOIA by failing to timely respond to Plaintiff's FOIA Requests with the required determinations.

(c)  Direct by injunction that Defendants perform adequate searches for records responsive to Plaintiff's FOIA Requests and provide Plaintiff with all non-exempt responsive records to Plaintiff's FOIA Requests no later than 20 days after this Court issues an order granting Plaintiff relief.

(d) Grant Plaintiff the costs of litigation, including reasonable attorney fees, as provided by FOIA, 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable authority.

(e)  Grant any other relief that the Court deems just and proper.

-14-

Dated: June 16, 2020

Respectfully submitted,

*/s/ Robert Stern*

ROBERT STERN (D.C. Bar No. 478742)
rstern@orrick.com
TIFFANY ROWE (D.C. Bar No. 1002218)
trowe@orrick.com
NICHOLAS PETERSON (D.C. Bar No.
1078997) (application to appear before the D.C.
District Court pending)
npeterson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005-1706
Telephone: 202-339-8400
Facsimile: 202-339-8500

RENE KATHAWALA (*pro hac vice*
application pending)
rkathawala@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: 212-506-5000
Facsimile: 212-506-5151

*Counsel for Plaintiff Orrick, Herrington &
Sutcliffe LLP*